**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Fortitude Surgery Center LLC, | No. CV-24-02650-PHX-KML |
| Plaintiff, | **ORDER** |
| v. | |
| Aetna Health Incorporated, et al., | |
| Defendants. | |

Fortitude Surgery Center LLC provided medical services to unidentified individuals and now seeks to recover payment for those services from Aetna Health, Inc. and Aetna Life Insurance Company (collectively, "Aetna"). Fortitude asserts an Employee Retirement Income Security Act ("ERISA") claim and seven state-law claims against Aetna. Aetna seeks dismissal of all claims. Because Fortitude failed to identify the ERISA health plans at issue, its ERISA claim is dismissed. Fortitude also failed to identify the non-ERISA health plans at issue, so most of its state-law claims fail on that basis. The motion to dismiss is granted with limited leave to amend.

**I. Background**

The complaint provides few meaningful details regarding the basis for Fortitude's claims. Instead, it consists of vague and conclusory allegations regarding interactions between Fortitude and Aetna. According to the complaint, Fortitude is a surgery center that provides medical services to individuals, including patients for whom Aetna is an insurer and administrator of health benefits plans. (Doc. 1 at 2.) Fortitude is out-of-network with

Aetna, meaning it does not have negotiated rates, and instead "submits claims to Aetna at [its] billed charges." (Doc. 1 at 4.) Before agreeing to treat an Aetna member, Fortitude contacted Aetna to verify the individual was covered by Aetna and confirm the individual's health plan provided out-of-network benefits for the type of treatment Fortitude would provide. (Doc. 1 at 5.) Aetna informed Fortitude that the individual was covered and had out-of-network benefits for the type of treatment sought. (Doc. 1 at 5.) Aetna also authorized Fortitude to provide treatment or informed Fortitude that no authorization was necessary. (Doc. 1 at 6.)

Despite its representations to Fortitude, Aetna "began serially denying payment" of Fortitude's claims. (Doc. 1 at 9.) Fortitude alleges Aetna's motivation for denying the claims was that Fortitude had "common ownership with certain other pain management providers in the Phoenix area which had previously . . . disputed unpaid claims with Aetna." (Doc. 1 at 9–10.) Based on those denials, Fortitude filed this suit asserting ERISA and state-law claims against Aetna on behalf of an unknown number of Aetna members. (*See* Doc. 1 at 13–26.)

Even viewed in the light most favorable to Fortitude, the complaint lacks sufficient detail to survive a motion to dismiss. In effect, Fortitude alleges it provided unidentified services to unidentified individuals who were covered by unidentified ERISA or non-ERISA health plans, and Aetna's failure to reimburse Fortitude violated the unidentified terms of those plans. These vague allegations are insufficient to survive a motion to dismiss.

**II.   Legal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted)). This is not a "probability requirement," but a requirement that the factual allegations show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A claim is facially plausible "when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 663–64.

### III. Discussion

Fortitude's ERISA claim and most of its state-law claims are dismissed because Fortitude failed to identify the ERISA and non-ERISA health plans at issue. Its Arizona Prompt Pay Act claim is dismissed because the statute does not provide a private right of action.

#### A. ERISA Claim

Fortitude asserts a single ERISA claim "to recover benefits due . . . under the terms" of a benefit plan. 29 U.S.C. § 1132(a)(1)(B). This claim is brought on behalf of an unidentified number of individuals covered by an ERISA-governed plan. Fortitude alleges Aetna is liable for its failure to pay ERISA plan benefits and owes Fortitude "the difference between what should have been paid [for Fortitude patients' treatment] and the amounts that were actually paid, if any, plus applicable interest and attorneys' fees[.]" (Doc. 1 at 14–15.)

In general, a plaintiff alleging an ERISA claim for benefits "must allege 'the existence of an ERISA plan,' and identify 'the provisions of the plan that entitle [him] to benefits.'"[1] *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1213 (9th Cir. 2020) (quoting *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1155 (C.D. Cal. 2015)). Fortitude has not pleaded any details about the purported ERISA plans, the patients, services, or claims at issue. (*See* Doc. 1.) Instead, it generally alleges "[p]eople who receive their health insurance through a private employment-based benefit

---

[1] Fortitude alleges the individuals who received care assigned their benefits to Fortitude (Doc. 1 at 6) and Aetna does not challenge the validity of those assignments. *See S. Coast Specialty Surgery Ctr., Inc. v. Blue Cross of California*, 90 F.4th 953, 958 (9th Cir. 2024) ("ERISA . . . permits the assignment of health and welfare benefits to a healthcare provider, and it allows such a provider to bring derivative claims on behalf of its patients."). But as an assignee, Fortitude merely "stands in the shoes of the assignor[s]" and is subject to the same pleading requirements the patients themselves would face. *Misic v. Bldg. Serv. Emps. Health & Welfare Tr.*, 789 F.2d 1374, 1378 n.4 (9th Cir. 1986).

plan are typically participants or beneficiaries of plans governed by ERISA[ ]" and it "believes that Aetna is the ERISA plan administrator and ERISA fiduciary for the ERISA claims at issue in this Complaint." (Doc. 1 at 10.) Those allegations do not provide enough specificity about the services rendered to Aetna-insured individuals, their plans, their plan's benefits, or Fortitude's efforts to obtain that information to survive this motion to dismiss.

An assignee of ERISA benefits seeking to recover those benefits must at least identify the ERISA plans and services at issue. That is particularly true when an assignee is attempting to assert many claims involving different individuals in a single suit. In *Glendale Outpatient Surgery Center v. United Healthcare Services, Inc.*, the Ninth Circuit encountered a similar attempt by an assignee to pursue a variety of claims. 805 F. App'x 530 (9th Cir. 2020). The court affirmed dismissal of the ERISA claim because the complaint did not identify "(i) any ERISA plan, apart from vague references to anonymous patients who allegedly assigned rights to [the plaintiff]; or (ii) any plan terms that specify benefits that the defendants were obligated to pay but failed to pay." *Id.* at 531. Those "deficiencies [were] exacerbated" by the plaintiff's "decision to lump 44 separate events—presumably involving distinct ERISA plans, coverage provisions, medical procedures, and insurer communications—into a single set of generalized allegations." *Id.* The same type of analysis applies here.

Fortitude's complaint consists only of "generalized allegations" regarding unidentified individuals. *Id.* Fortitude points to eight allegations in its complaint as providing the requisite specificity. (*See* Doc. 24 at 9–10.) Those allegations boil down to Fortitude's assertions that it verified coverage with Aetna before providing services, provided services, billed Aetna, and then Aetna refused to pay. But those allegations do not identify any specific ERISA plan. Nor do they identify plan terms covering the services Fortitude allegedly provided, or even what services Fortitude provided. While Fortitude was not required to "recite every relevant term of every relevant plan," it needed to "do more than broadly allege . . . [a] generalized obligation" for Aetna to provide payment. *ABC Servs. Grp., Inc. v. Aetna Health & Life Ins. Co.*, No. 22-55631, 2023 WL 6532648,

at *1 (9th Cir. Oct. 6, 2023).

Fortitude attempts to salvage its complaint by attaching exhibits to its response which it claims shows its counsel "produced a list of each claim in dispute that includes . . . for each claim in dispute: the patient's name, claim number, insurance policy number, insurance group number, dates of service, and the amount of each claim in dispute." (Doc. 24 at 9 n.1 (citing Docs. 24-1, 24-2. 24-3).) These exhibits cannot be considered because they are not incorporated by reference into the complaint. *See Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1179 (N.D. Cal. 2024) (incorporation by reference allows certain documents to be considered as if they are part of the complaint and is appropriate when "the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim") (simplified). And even if the court were to consider Fortitude's exhibits, the necessary substantive information is not included. The exhibits merely contain a declaration by Fortitude's counsel that he "served a list of the disputed claims at issue . . . to Aetna via secure file transfer," a receipt of that supposed file transfer, and a receipt of Aetna's supposed download of that file transfer. (*See* Docs. 24-1 at 1, 24-2, 24-3.) Fortitude does not cite any authority that allows a plaintiff to file a vague complaint and then a few months later send defense counsel the crucial information underlying its claims as a way to salvage it. To survive a motion to dismiss, Fortitude must provide the requisite details in its complaint.

Fortitude's ERISA claim is dismissed with leave to amend. Should Fortitude choose to amend, it should at the very least identify the ERISA plans at issue, the plan terms covering the services Fortitude allegedly provided Aetna-members, and the services Fortitude provided to those patients. And if it cannot obtain the plan information independently, the complaint must detail its efforts to do so. *See Physicians Surgery Center of Chandler v. Cigna Healthcare Inc.* ("*Physicians Surgery Center I*"), 550 F. Supp. 3d 799, 808–09 (D. Ariz. 2021).

### B. State-Law Claims

Fortitude asserts seven state-law causes of action, six of which are for "claims

governed by state law and do[ ] not apply to any Unpaid Claims associated with health insurance plans governed by ERISA."[2] (Doc. 1 at 15, 16, 18, 19, 21, 24). Similar to the problems with Fortitude's ERISA claim, Fortitude has pleaded no facts identifying the non-ERISA plans at issue, the individuals covered by those plans, or the services for which Fortitude seeks payment. (*See* Doc. 1.)

Fortitude has not complied with Fed. R. Civ. P. 8(a)'s requirement to provide "a short and plain statement" of its six state-law claims showing it is "entitled to relief" because it has not given any details on the non-ERISA plans at issue. Details are essential because of the prevalence of ERISA-governed plans combined with ERISA's preemptive reach. Disputes regarding healthcare benefits routinely involve ERISA plans. *Cf. California Div. of Lab. Standards Enf't v. Dillingham Const., N.A., Inc.*, 519 U.S. 316, 327 n.5 (1997) (citing authority that "88% of non-elderly Americans have private health care insurance through [ERISA] plans"). And ERISA "preempts state law claims that relate to" any ERISA-governed plan. *Farr v. U.S. W. Commc'ns, Inc.*, 151 F.3d 908, 913 (9th Cir. 1998). That "preemption provision is expansive." *Howard Jarvis Taxpayers Ass'n v. California Secure Choice Ret. Sav. Program*, 997 F.3d 848, 856 (9th Cir. 2021). The likelihood that ERISA applies and the broad reach of ERISA preemption have prompted courts to require meaningful factual allegations regarding state-law claims.

"Where, as here, plaintiffs assert state-law claims that depend on the terms of certain healthcare plans, but plaintiffs do not allege any factual matter giving rise to the inference that such healthcare plans are *not* governed by ERISA, the state-law claims are subject to dismissal on the ground that they are preempted by ERISA." *Pac. Recovery Sols. v. United Behav. Health*, No. 4:20-CV-02249 YGR, 2021 WL 1222519, at *4 (N.D. Cal. Apr. 1, 2021) (citing cases). A plaintiff cannot simply "refer[ ] to non-ERISA plans without specific allegations identifying a particular non-ERISA plan at issue" for its state-law claims to survive. *Omega Hospital, LLC v. United Healthcare Services, Inc.*, No. 16-

---

[2] These claims are for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, promissory estoppel, negligent misrepresentation, and breach of implied contract. (Doc. 1 at 15–26.)

- 6 -

00560-JJB-EWD, 2017 WL 4228756, at *4 (M.D. La. Sept. 22, 2017) (dismissing state-law claims of "non-ERISA plan participants" as preempted by ERISA on that ground); *see also Biohealth Med. Lab'y, Inc. v. Connecticut Gen. Life Ins. Co.*, No. 1:15-CV-23075-KMM, 2016 WL 375012, at *5 (S.D. Fla. Feb. 1, 2016), *aff'd in part, vacated in part on other grounds sub nom. BioHealth Med. Lab'y, Inc. v. Cigna Health & Life Ins. Co.*, 706 F. App'x 521 (11th Cir. 2017) (same).

Fortitude cites allegations in its response that it contends provide factual support for the existence of non-ERISA plans (*see* Doc. 24 at 10–11)—which would therefore prevent its state-law claims from being preempted—but it does not provide anything more than conclusory allegations that there are non-ERISA plans at issue. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss). Fortitude again tries to counter Aetna's assertion "that it is unable to identify the plans at issue" by citing the information it sent Aetna months after filing suit. (Doc. 24 at 11 n.2.) But those exhibits are not incorporated by reference for the same reason discussed previously and even if they were, they do not provide the information Fortitude claims to have sent Aetna: they only show Fortitude sent Aetna the information and that Aetna downloaded it. (*See* Docs. 24-2, 24-3.) That is insufficient to survive a motion to dismiss. The previously-mentioned six state-law claims are therefore dismissed.[3]

Fortitude's seventh state-law claim arises under A.R.S. § 20-3102, part of Arizona's Prompt Pay Act. (Doc. 1 at 23–24.) To the extent this claim is based on claims handling connected to ERISA-governed plans, it would likely be preempted. *See Farr*, 151 F.3d at 913.

Aetna argues that even if there are non-ERISA plans at issue, the Prompt Pay Act does not authorize a private right of action. Indeed, the statute does not explicitly confer a private right of action. *See* A.R.S. § 20-3102; *see also Physicians Surgery Center of Chandler v. Cigna Healthcare Inc.* ("*Physicians Surgery Center II*"), 609 F. Supp. 3d 930,

---

[3] If Fortitude chooses to amend these claims, it should be cognizant of Aetna's individual arguments for why each claim was inadequately pleaded. (*See* Doc. 21 at 14–23.)

940 (D. Ariz. 2022) ("No authority indicates Section 20-3102 provides a private right of action" and "the Court cannot find[ ] any . . ."). Arizona courts "have implied the existence" of a private right of action "when doing so is consistent with 'the context of the statutes, the language used, the subject matter, the effects and consequences, and the spirit and purpose of the law." *McNamara v. Citizens Protecting Tax Payers*, 337 P.3d 557, 559 (Ariz. Ct. App. 2014) (quoting *Transamerica Fin. Corp. v. Superior Ct.*, 761 P.2d 1019, 1020 (Ariz. 1988)). Arizona courts do not always evaluate each factor when conducting this analysis, *see id.* at 559–61, and the factors are meant to be "a tool of statutory construction designed to discern legislative intent, not [as] a license for the judicial branch to read into a statute something that might be perceived as better effectuating a statute's spirit and purpose." *Id.* at 559. To that end, Arizona courts only imply a private right of action in "rare circumstances." *Conroy v. Gottfried*, No. 1 CA-CV 20-0619, 2021 WL 4439145, at *2 (Ariz. Ct. App. Sept. 28, 2021).

Using the factors provided by Arizona courts, several indicators point to the lack of a private right of action under A.R.S. § 20-3102.

For one, Title 20 of the Arizona Revised Statutes is required to be enforced by the director of the Department of Insurance ("DOI"). A.R.S. § 20-142(A); A.R.S. § 20-102(1). The director is given explicit authority to refer violations of Title 20 to the attorney general who "shall bring and prosecute" actions for those violations. A.R.S. § 20-152(A)–(B). *Cf. Transamerica*, 761 P.2d at 1021 (finding the legislature "contemplated private actions" because the legislature had failed "to expressly empower the superintendent" to adjudicate related claims). Thus, the context of Title 20's enforcement power suggests A.R.S. § 20-3102 likely does not grant a private right of action.

The statute's language itself does not grant or prohibit a private right of action. It rests some enforcement responsibility with the director of the DOI who "may examine the health insurer" when the director "finds a significant number of grievances [against them] that have not been resolved"—but does not mention a private right of action. A.R.S. § 20-3102(G). Other sections of Title 20 explicitly grant a private right of action, such as when

a health insurer enrollee is "aggrieved by an arbitration decision regarding a disputed surprise out-of-network bill," A.R.S. § 20-3119, and others explicitly state they do not create "any new private right or cause of action." A.R.S. § 20-120(E)(3). Fortitude argues the legislature would have explicitly said it was precluding a right of action under A.R.S. § 20-3102 like it did in A.R.S. § 20-120(E)(3) if that were the case. (Doc. 24 at 17 n.4.) But because portions of Title 20 explicitly grant a private right of action and others explicitly preclude one, A.R.S. § 20-3102's silence does not help determine if it provides a private right of action.

Fortitude also argues the "spirit and purpose" of the law—which the Arizona Court of Appeals has "generally found . . . to be a strong factor suggesting a legislative intent to provide a private right of action"—indicates the legislature intended to create a private right of action in A.R.S. § 20-3102. *Burns v. City of Tucson*, 432 P.3d 953, 957 (Ariz. Ct. App. 2018), *as amended* (Nov. 27, 2018). As to that factor, the Arizona Supreme Court held one statute that "inure[d] to the benefit of an individual" indicated "a private right of action [wa]s contemplated by the legislature for enforcement of this individual right, even though other sections . . . provide[d] for administrative action for enforcement of its regulatory scheme." *Transamerica*, 761 P.2d at 1021. Other Arizona cases too have found or declined to find private rights of action based on who the statute was intended to benefit. *See Chavez v. Brewer* 214 P.3d 397, 406 (Ariz. Ct. App. 2009) (finding implied right of action for individuals who were "not 'incidental' beneficiaries of the statutes but members of 'the class for whose especial benefit' the statutes were adopted" and distinguishing *Lancaster v. Arizona Board of Regents*, 694 P.2d 281, 287 (Ariz. Ct. App. 1984), because those plaintiffs would only "benefit incidentally"); *see also McCarthy v. Scottsdale Unified Sch. Dist. No. 48*, 409 F. Supp. 3d 789, 820 (D. Ariz. 2019) ("Arizona courts have declined to find an implied right of action where third persons are only incidental beneficiaries of the statutory enactment.") (citing cases).

So, to help determine the statute's spirit and purpose—which will aid in determining whether it grants a private right of action—Arizona courts must look at who the intended

beneficiaries of the statute are.

According to the legislative history of the bill that became A.R.S. § 20-3102, healthcare enrollees are the intended beneficiaries of the statute. *See* Arizona State Senate, Minutes of Committee on Financial Institutions and Retirement, 44th Leg., 2d Reg. Sess. (Feb. 23, 2000) [hereinafter "Senate Committee Minutes"] (the statute "will provide a great deal of accountability to ensure that [healthcare] enrollees get the benefit of their bargain"); Arizona House of Representatives, Minutes of Committee on Commerce, 44th Leg., 2d Reg. Sess. (Jan. 26, 2000) [hereinafter "House Committee Minutes"] ("the goals behind the legislation, . . . are that health care consumers receive the coverage that they purchased with a minimum amount of aggravation"). But the legislative history also makes clear that the DOI, not private citizens, are meant to enforce the statute. *See* Senate Committee Minutes ("All these new obligations are placed within Title 20, and the [DOI] will be obligated to enforce them."). The DOI even foresaw "the potential for significant demands on the department" in part because there is no provision requiring "internal remedies be exhausted before turning to the department for pursuit of . . . claims." Senate Committee Minutes. During an Arizona House of Representatives Committee meeting, the bill was opposed on the grounds that "unless this piece of legislation has the right to sue clause to add more 'teeth' to the bill, this legislation [will] not be enforced," signaling the bill did not grant a private right of action. House Committee Minutes. So, healthcare enrollees are the intended beneficiaries of A.R.S. § 20-3102, but the legislative history suggest the legislature intended the DOI to enforce its provisions.

Arizona's statutory interpretation factors therefore reinforce another Arizona district judge's conclusion that A.R.S. § 20-3102 does not grant a private right of action. *See Physicians Surgery Center II*, 609 F. Supp 3d at 940. Fortitude's claim under the Arizona Prompt Pay statute is therefore dismissed with prejudice.

**IV.  Conclusion**

Fortitude's ERISA claim is dismissed because it fails to identify the ERISA plans at issue. Most of Fortitude's state-law claims are dismissed with leave to amend because

they fail to identify the non-ERISA plans at issue. Its Arizona Prompt Pay Act claim is dismissed with prejudice because the statute does not confer a private right of action. Fortitude is granted leave to amend all claims except the Arizona Prompt Pay Act claim.

Accordingly,

**IT IS ORDERED** the Motion to Dismiss (Doc. 21) is **GRANTED** with limited leave to amend. Plaintiff may amend all claims except for the claim under the Arizona Prompt Pay Act.

**IT IS FURTHER ORDERED** no later than **June 2, 2025**, plaintiff shall file an amended complaint. The Clerk of Court is directed to enter a judgment of dismissal with prejudice in the event no amended complaint is filed.

**IT IS FURTHER ORDERED** the Motion to Withdraw (Doc. 29) is **GRANTED**. Attorneys Anthony Argiropoulos, William Gibson, Thomas Kane, Scheherazade Wasty, and Marguerite McGowan Stringer of Epstein Becker & Green, P.C., are withdrawn as counsel of record in this matter for Plaintiff Fortitude Surgery Center, LLC.

Dated this 19th day of May, 2025.

Honorable Krissa M. Lanham
United States District Judge