**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Fortitude Surgery Center LLC, | No. CV-24-02650-PHX-KML |
| Plaintiff, | **ORDER** |
| v. | |
| Aetna Health Incorporated, et al., | |
| Defendants. | |

Plaintiff Fortitude Surgery Center LLC ("Fortitude") provided medical services to patients and now seeks to recover payment for those services from defendants Aetna Health, Inc. and Aetna Life Insurance Company (collectively, "Aetna"). Fortitude initially filed a complaint asserting Employee Retirement Income Security Act ("ERISA") and state-law claims, but the court dismissed those claims in May 2025. Fortitude filed an amended complaint and the court again dismissed all claims in September 2025, granting leave to amend one final time. (Doc. 45.) Fortitude has now filed a Second Amended Complaint ("SAC") (Doc. 52), and Aetna has moved to dismiss some of the state-law claims (Doc. 57).[1] Its motion is granted.

I.      **Factual Background**

Aetna is a health benefits insurer and insurance plan administrator that provided and/or administered insurance plans for individuals who received services from Fortitude,

---

[1] Aetna also requested the court dismiss a claim alleged under the Federal Employees Health Benefits Act ("FEHBA") (Doc. 57 at 1), but Fortitude voluntarily dismissed that claim (Doc. 60 at 1).

a surgical center. (Doc. 52 at 2-3.) Fortitude is out-of-network with Aetna, which in practice means Fortitude "submit[s] claims to Aetna at [its] billed charges" rather than using previously-negotiated rates for reimbursement. (Doc. 52 at 4.) Before providing treatment, Fortitude contacted Aetna to verify the individual was covered by an Aetna-insured or Aetna-administered plan and their coverage included out-of-network benefits for the relevant treatment. (Doc. 52 at 6.) Fortitude also verified coverage for the specific treatment via Aetna's website, "personal communication between Fortitude and Aetna," and/or Aetna's Clinical Policy Bulletins. (Doc. 52 at 6.) When Fortitude directly "sought authorization from Aetna to provide [a specific] treatment," Aetna either authorized the treatment or, "more often, informed Fortitude that no preauthorization was necessary." (Doc. 52 at 7.) Fortitude also alleges it "verified Aetna's position that the procedure was considered reasonable and necessary." (Doc. 52 at 6-7.) Fortitude would not have provided the relevant services without Aetna's authorization. (Doc. 52 at 8.)

Despite representing that coverage would apply to the services Fortitude planned to provide, "Aetna began serially denying payment on the Fortitude bills" without warning (Doc. 52 at 11) and without explanations sufficiently detailed for Fortitude to glean the basis for the refusals or for the failed appeals Fortitude typically filed after a refusal (Doc. 52 at 56-57). Fortitude did, however, receive a letter sent on May 1, 2020 from an Aetna claim investigator which requested information from Fortitude including medical records of relevant patients and their treatment. (Doc. 52 at 11-12.) But Fortitude alleges it responded in full and Aetna ultimately denied its claims "because Fortitude has common ownership with certain other pain management providers in the Phoenix area which [] previously had disputed unpaid claims with Aetna." (Doc. 52 at 12.)

As a condition of receiving care at Fortitude, each patient assigned benefits and rights to Fortitude, including the rights to obtain information regarding coverage and to collect payments Aetna owed the member. (Doc. 52 at 8-9.) The validity of these assignments is uncontested. (Doc. 52 at 9.) Based on those assignments, Fortitude filed this suit asserting an ERISA claim on behalf of Aetna members on ERISA plans and state-law

claims on behalf of Aetna members on non-ERISA plans. The court dismissed the ERISA claim in May 2025 (Doc. 30) and again in September 2025 (Doc. 45) because Fortitude had not provided sufficient information specific to the plans at issue to support its claims. The September order also dismissed the remaining state-law claims on jurisdictional grounds, but pointed out some had fundamental flaws. (Doc. 45 at 8.) It granted leave to amend one final time (Doc. 45 at 7) and Fortitude filed its SAC in November 2025 (Doc. 52). Aetna now moves to dismiss most of the state-law claims. (Doc. 57.)

## II.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (simplified). This is not a "probability requirement," but a requirement that the factual allegations show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III.    Analysis

Aetna moves to dismiss claims four through seven (Doc. 57 at 6), which allege unjust enrichment, promissory estoppel, negligent misrepresentation, and breach of implied contract (Doc. 52 at 62-70). Although portions of the complaint are unredacted solely in the version filed under seal, this order discusses only public portions. Fortitude apparently decided not to amend its state-law claims at all, despite the court's warning many were "obviously flawed." (Doc. 45 at 8.)

### A. Unjust Enrichment

Fortitude alleges Aetna's withholding of payment for Fortitude's services to Aetna patients constituted unjust enrichment. (Doc. 52 at 62.) Unjust enrichment requires a plaintiff show (1) an enrichment, (2) an impoverishment, (3) a connection between the

enrichment and impoverishment, (4) a lack of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law. *Ideasolv LLC v. Geante Rouge SARL*, No. CV-21-01905-PHX-MTL, 2022 WL 3042858, at *4 (D. Ariz. Aug. 2, 2022).

A party asserting a breach-of-contract claim may receive a remedy at law. Thus, given the final element, when a party asserts both unjust enrichment and breach of contract, the existence of a possible contractual remedy may foreclose their unjust enrichment claim. *Brooks v. Valley Nat. Bank*, 548 P.2d 1166, 1171 (Ariz. 1976); *see also Physicians Surgery Ctr.*, 609 F. Supp. 3d 903, 939 (D. Ariz. 2022); *Sutter Home Winery, Inc. v. Vintage Selections*, Ltd., 971 F.2d 401, 408 (9th Cir. 1992). But a party may bring an unjust enrichment claim in the alternative "where her inability to enforce the contract leaves her without an adequate remedy at law," *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 833 (D. Ariz. 2016), and where the party has not received the benefit of the contractual bargain, *Adelman v. Christy*, 90 F. Supp. 2d 1034, 1045 (D. Ariz. 2000). *See also Lopez v. Musinorte Ent. Corp.*, 434 F. App'x 696, 699 (9th Cir. 2011) ("a plaintiff can pursue an unjust enrichment claim as an alternative theory of recovery in conjunction with a breach of contract claim, subject, however, to only one recovery"). Because Fortitude pleads unjust enrichment in the alternative (Doc. 52 at 62) and it remains possible a jury could find no valid contract exists or Fortitude did not receive the benefit of its bargain, the claim is not doomed by Fortitude also alleging a contractual remedy. *See Victory Ins. & Fin. Servs. LLC v. Ben Oberg Enters. LLC*, No. CV-23-08015-PCT-DJH, 2025 WL 661879, at *4 (D. Ariz. Feb. 28, 2025); *Adelman*, 90 F. Supp. 2d at 1045.

However, Aetna also argues Fortitude did not experience an impoverishment from the unpaid services because it can recover payment for those services from its patients. *Dependable Nurses of Phoenix LLC v. Cigna Healthcare Inc.*, No. CV-20-01877-PHX-SPL, 2021 WL 9597915, at *6 (D. Ariz. Feb. 2, 2021) ("When there is an opportunity to recover from a third party, in this case the patients themselves, there is no [impoverishment] to the plaintiff provider, a crucial element of unjust enrichment"). The

court noted this flaw in its prior order but Fortitude elected not to change the allegations in the SAC. (Doc. 45 at 8.) Instead, Fortitude argues it is making this claim as the patients' assignee, "standing in the shoes of the patients." (Doc. 58 at 5.)

Fortitude knew how to allege a claim based on its status as an assignee. The breach-of-contract claim includes specific allegations showing Fortitude is asserting that claim in that status. (Doc. 52 at 59.) But for unjust enrichment, the SAC alleges "Fortitude has been significantly damaged," "Fortitude incurred costs," and "Fortitude will not have been afforded an adequate remedy under law." (Doc. 52 at 62-63.) Nowhere in the SAC does Fortitude allege it is pursuing its unjust enrichment claim by standing in the shoes of its patients; it does not allege the patients were impoverished or the patients have an absence of a remedy at law. Accordingly, Fortitude could recover from its patients and has not plausibly pleaded it suffered an impoverishment. *See id*. Its claim is dismissed.

## B. Promissory Estoppel

Fortitude alleges Aetna promised to reimburse Fortitude for particular services "in accordance with the terms of the Plan at issue" during pre-authorization conversations and Fortitude relied on those promises to its detriment. (Doc. 52 at 64-65, 69.) It appears to make this claim on its own behalf, not as an assignee, and does not explicitly plead the claim in the alternative. (*See* Doc. 52 at 64-65 (alleging Aetna knew "Fortitude would rely upon Aetna's representations" and should be estopped from denying "its promise to Fortitude")).

A plaintiff can recover under the theory of promissory estoppel if he shows a defendant made a promise, should have reasonably foreseen the plaintiff would rely on that promise, and the plaintiff "actually relied on the promise to his detriment." *Higginbottom v. State*, 51 P.3d 972, 977 (Ariz. Ct. App. 2002); *see Contempo Constr. Co. v. Mountain States Tel. & Tel. Co*., 736 P.2d 13, 16 (Ariz. Ct. App. 1987). "Arizona law prohibits an action based on the promissory estoppel theory of liability if there is an express, written contract on the same subject matter." *Bowman v. Honeywell Int'l*, Inc., 438 F. App'x 613, 615 (9th Cir. 2011). But plaintiffs may allege inconsistent theories of recovery, *Anderson*

*v. Edward D. Jones & Co., L.P.*, 990 F.3d 692, 701 (9th Cir. 2021), and "proceed simultaneously with claims for promissory estoppel and breach of contract at the pleading stage" in case it later becomes clear the contract is not applicable. *Alpha GRP, Inc. v. Subaru of Am., Inc.*, No. CV182133MWFMRWX, 2018 WL 5986989, at \*12 (C.D. Cal. June 8, 2018) (promissory estoppel claim could proceed despite contract because there were "disputes as to whether a valid contract has been formed"); *TM Techs. Inc. v. Hand Techs. Inc.*, No. CV-18-00286-TUC-DCB, 2019 WL 4643798, at \*5 (D. Ariz. Sept. 24, 2019) (promissory estoppel claim could proceed despite contract because promises at issue may have been outside contract's scope).

Although a promissory estoppel claim can be pleaded simultaneously with a breach-of-contract claim, it cannot be premised on the same allegations giving rise to the contract claim because then promissory estoppel would rely on the contract's validity and applicability. *Mobile Tech, Inc. v. Hitachi Sols. Am., Ltd.*, No. SACV2100461CJCADSX, 2021 WL 9747619, at \*4 (C.D. Cal. Dec. 28, 2021). The SAC makes exactly that forbidden move in explicitly alleging Aetna promised to pay for services "in accordance with its obligations under the [plans]." (Doc. 52 at 64; *see also id*. ("Aetna confirmed to Fortitude that the [beneficiary] was covered by a plan . . . with out-of-network benefits for the services").) In other words, Fortitude's promissory estoppel claim relies on Aetna's promise to abide by the terms of the insurance contracts. Although Fortitude now argues Aetna's promise to pay according to its plan obligations is "consistent with and independent of" those plans (Doc. 58 at 9), it does not explain how.

Fortitude's promissory estoppel claim fails for an additional, independent reason. Though Fortitude has now properly pleaded which services Aetna agreed to cover, the promise to cover those services according to plan obligations appears to be an insufficiently-definite conditional statement because Fortitude admittedly did not specify the relevant rates, conditions, or timeframe for the payment (*see* Doc. 52 at 7). *R&R Surgical Inst. v. Health Care Serv. Corp.*, No. CV232120DSFGJSX, 2023 WL 8008979, at \*3 (C.D. Cal. July 27, 2023) (dismissing claim because plaintiff did not allege a clear

promise to pay any specific rate); *Dependable Nurses of Phoenix LLC*, 2021 WL 9597915, at \*6 (plaintiff did not plead its reliance was reasonable where "it does not appear [the insurer] ever promised a set rate").

For both reasons, the motion to dismiss this claim is granted.

### C. Negligent Misrepresentation

Fortitude asserts a negligent misrepresentation claim, alleging Aetna during pre-authorization conversations knowingly "provided Fortitude with false or incorrect information or omitted or failed to disclose material information to Fortitude relating to Aetna's intention to pay for the services Fortitude provided." (Doc. 52 at 66-68.)

"Arizona recognizes a cause of action for negligent misrepresentation." *McAlister v. Citibank (Arizona), a Subsidiary of Citicorp*, 829 P.2d 1253, 1261 (Ariz. Ct. App. 1992) (simplified). To plead this claim, the plaintiff must show: "(1) the defendant provided false information in a business transaction; (2) the defendant intended for the plaintiff to rely on the incorrect information or knew that it reasonably would rely; (3) the defendant failed to exercise reasonable care in obtaining or communicating the information; (4) the plaintiff justifiably relied on the incorrect information; and (5) resulting damage." *KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 340 O.3d 405, 412 n.7 (Ariz. Ct. App. 2014).

"A negligent misrepresentation claim cannot be based upon a promise of future conduct"; instead, the plaintiff must prove misrepresentation of presently-existing facts. *Bowman*, 438 F. App'x at 615. Fortitude characterizes certain misrepresentations as present facts, for instance Aetna's statements that each non-ERISA beneficiary was covered by out-of-network benefits and that Fortitude was authorized to provide treatment. (Doc. 52 at 10.) But courts have found similar allegations center on an intention to pay rather than present facts. For example, in *McAlister v. CitiBank*, the plaintiff alleged his bank made misrepresentations in describing its policy, confirming the plaintiff would be allowed to draw money up to his credit limit, and confirming deposits would be credited to his account. 829 P.2d at 1261. The Arizona Court of Appeals held these statements "all relate[d] to future events" and were not actionable misrepresentations. *Id.*; *see also*

*Bowman*, 438 F. App'x at 615 (affirming dismissal of negligent misrepresentation claim where defendant stated plaintiff would begin work once she passed a background check because that statement described a future action). Those statements, like Fortitude's, can be characterized as "statements of fact" but in substance relate to future events and promises of payment.

Fortitude also implies fraud by alleging Aetna misrepresented statements knowingly and with the intent to induce Fortitude's actions. (Doc. 52 at 66-68.) Even without those specific allegations, negligent misrepresentation claims are typically pleaded under Rule 9(b)'s fraud standard. *Sweeney v. Darricarrere*, No. 2:09-CV-00266-JWS, 2009 WL 2132696, at *12 n.109 (D. Ariz. July 14, 2009) (collecting cases); *see also In re Arizona Theranos, Inc., Litig.*, 256 F. Supp. 3d 1009, 1032 (D. Ariz. 2017). This heightened pleading standard requires plaintiffs to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Under that standard, plaintiffs must identify "'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about the purportedly fraudulent statement, and why it is false.'" *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054-55 (9th Cir. 2011) (simplified); *see Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). "[T]he absence of specification of any times, dates, places or other details of that alleged fraudulent involvement is contrary to the fundamental purposes of Rule 9(b)." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

Fortitude has not alleged the circumstances of the alleged misrepresentations with sufficient particularity. It has only generally identified the individuals who made the statements (Aetna representatives), the time period ("prior to providing medical treatment"), and the content (confirming certain individuals were insured by Aetna for authorized services). (Doc. 52 at 6-7.) Even if those allegations describe the content of those conversations particularly enough, it is not clear from the SAC where they took place, which Aetna representatives participated, or when they occurred. Fortitude now alludes to specific emails and phone calls (Doc. 58 at 12), but does not provide the relevant details in

the SAC or its briefing. *Semegen*, 780 F.2d at 731; *see also Lui Ciro, Inc. v. Ciro, Inc.*, 895 F. Supp. 1365, 1375 (D. Haw. 1995) (general allegations that party made representations over the course of two months via telephone and during meetings were not sufficiently particular). Fortitude does not meet the 9(b) standard.[2]

Because Fortitude did not meet the Rule 9(b) pleading standard and did not sufficiently plead misrepresentation of present facts, Aetna's motion to dismiss this claim is granted.

### D.  Breach of Implied Contract

Fortitude alleges the pre-treatment conversations in which Aetna authorized the relevant treatments and the parties' later conduct gave rise to implied contracts dictating Aetna would reimburse Fortitude for the treatment it provided to Aetna patients. (Doc. 52 at 69.) Because Aetna failed to perform its reimbursement obligations, Fortitude alleges the implied contract was breached. (Doc. 52 at 70.)

Valid contracts require an offer, acceptance, consideration, and intent by the parties to be bound. *Day v. LSI Corp.*, 174 F. Supp. 3d 1130, 1153 (D. Ariz. 2016), *aff'd*, 705 F. App'x 539 (9th Cir. 2017). Contracts may be "implied," *i.e.*, "proved by circumstantial evidence rather than by express written or oral terms," but parties attempting to recover on that theory must still show all elements of the contract existed. *Pyeatte v. Pyeatte*, 661 P.2d 196, 203 (Ariz. Ct. App. 1982); *see Dependable Nurses of Phoenix LLC*, 2021 WL

---

[2] Additionally, though the parties do not address it, this claim appears barred by the economic loss doctrine, which precludes tort recovery and "limit[s] a contracting party to contractual remedies" where the party only alleges economic damages. *Miidas Greenhouses, LLC v. Glob. Horticultural, Inc.*, 244 P.3d 579, 581-82 (Ariz. Ct. App. 2010) (simplified); *see also Ares Funding, L.L.C. v. MA Maricopa, L.L.C.*, 602 F. Supp. 2d 1144, 1150 (D. Ariz. 2009) (economic loss doctrine bars recovery "when the claim alleges only economic damages resulting from an alleged breach of contract") (simplified). Fortitude's negligent misrepresentation claims allege only economic damage and are explicitly premised on Aetna's alleged breach of contract. (*See* Doc. 52 at 66-67.) Because the doctrine bars negligent misrepresentation claims unless they "grow out of circumstances independent of [the parties'] contractual relationship," *Finepoint Innovations, Inc.*, No. CV 04–1318–PHX–SMM, 2006 WL 3313688, at *3 (D. Ariz. Nov. 13, 2006), Fortitude has not pleaded facts that would allow this claim to survive.

9597915, at *5 ("The terms of the implied-in-fact contract must be as ascertainable as those in a written or oral contract."). Courts have dismissed claims alleging breaches of implied contracts where certain key terms, like rates of reimbursement, remain unclear. *See, e.g., Dependable Nurses of Phoenix LLC*, 2021 WL 9597915, at *5.

Fortitude describes the terms of the implied contract too vaguely to properly allege an implied contract claim. It alleges the parties impliedly contracted to follow the insurance plans under which Fortitude is owed compensation. (Doc. 52 at 66; *see* Doc. 54-1.) But it admits it did not know the terms of the implied contract when it provided treatment, and even now apparently does not know the agreed-upon reimbursement rate. (Doc. 52 at 6; *see also* Doc. 52 at 69-70 (alleging the rates were, "at a minimum, equivalent to the usual and customary rate," "alternatively" the reasonable value of the professional services provided by Fortitude, the "usual and customary fees in that locality," and "in accordance with rates Aetna pays for other substantially identical claims submitted by other providers as governed by the terms of the applicable Policy").) Fortitude also fails to allege additional key details, including whether the parties agreed on a timeframe for the reimbursements, remedies, termination rights, or duration. The implied contract is therefore not properly pleaded. *See id.* (no implied contract where court could not infer its terms, including the rate of reimbursement); *Pyeatte*, 661 P.2d at 200-01 (no contract where parties did not agree on timeframe, location, or cost).

Accordingly, Aetna's motion to dismiss this claim is granted.

## IV.    Conclusion

Fortitude made no meaningful changes to its state-law claims in the SAC. Aetna's motion to dismiss is granted without leave to amend a third time. *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) (noting a "district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint").

Accordingly,

**IT IS ORDERED** Aetna's partial Motion to Dismiss (Doc. 57) is **GRANTED**.

**IT IS FURTHER ORDERED** as follows:

The parties are directed to meet, confer, and develop a Rule 26(f) Joint Case Management Report, which must be filed **within 2 weeks of the date of this order**. It is the responsibility of plaintiff(s) to initiate the Rule 26(f) meeting and prepare the Joint Case Management Report. Defendant(s) shall promptly and cooperatively participate in the Rule 26(f) meeting and assist in preparation of the Joint Case Management Report.

This case was filed on October 1, 2024, but has not yet progressed beyond the pleading stage. The court's general practice is to require the filing of dispositive motions no later than two years after a case begins. Here, the presumptive deadline is *sua sponte* extended such that dispositive motions are due December 1, 2026, but the parties are warned that deadline will not be extended absent extraordinary circumstances. The parties must propose case management deadlines that allow for the completion of all discovery prior to that date.

The Joint Case Management Report shall contain the following information in separately-numbered paragraphs.

1. The parties who attended the Rule 26(f) meeting and assisted in developing the Joint Case Management Report;

2. A list of all parties in the case, including any parent corporations or entities (for recusal purposes);

3. Any parties that have not been served and an explanation of why they have not been served, and any parties that have been served but have not answered or otherwise appeared;

4. A statement of whether any party expects to add additional parties to the case or otherwise amend pleadings;

5. The names of any parties not subject to the court's personal (or *in rem*) jurisdiction;

6. A statement indicating whether the parties would prefer that the court hold a case management conference before issuing a scheduling order—and, if so,

- 11 -

an explanation of why this would be helpful.

7.    A short statement of the nature of the case (no more than three pages), including a description of each claim, defense, and affirmative defense;

8.    A discussion of whether plaintiff(s) is entitled to conduct discovery on the ERISA claims (including conflict-of-interest discovery) and, if so, the appropriate scope of discovery for ERISA claims, as well as the appropriate scope of discovery for Counts 2-4, the state-law claims for which plaintiff(s) is entitled to conduct discovery;

9.    Proposed page limits for dispositive motions, responses, and replies. The court anticipates briefing ERISA claims and state-law claims together, and the parties should note the court does not permit the filing of a separate statement of facts;

10.    Whether the case is suitable for reassignment to a United States Magistrate Judge for all purposes or suitable for referral to a United States Magistrate Judge for a settlement conference;

11.    The status of any related cases pending before this or other courts;

12.    Proposed deadlines for each of the following events. In proposing deadlines, the parties should keep in mind the Case Management Order will contain deadlines to govern this case and once the dates have been set in the Case Management Order and in light of the age of this case, the court will vary them only upon a showing of good cause. A request by counsel for extension of discovery deadlines in any case that has been pending more than two years must be accompanied by a certification stating the client is aware of and approves of the requested extension. The court does not consider lawyers' scheduling conflicts, settlement talks, or the scheduling of mediations to constitute extraordinary circumstances warranting an extension. The parties must propose the following:

    a.    If there is a dispute as to the need for and/or scope of discovery and/or

as to the standard of review regarding the ERISA claims, a deadline for plaintiff(s) to file a motion, not to exceed seven pages, entitled "Motion for ERISA Discovery/Standard of Review Determination," summarizing its position and a deadline for defendant(s) to submit a seven-page response brief. No replies may be filed. These deadlines should be set as soon as practicable.

b.  A deadline for amending the pleadings and a deadline for any motion to supplement the administrative record applicable to the ERISA claims.

c.  A deadline for the completion of fact discovery for both ERISA claims (if discovery is allowed) and state-law claims. Discovery requests must be served and depositions noticed sufficiently in advance of the discovery cutoff date to ensure reasonable completion by the deadline, including time to resolve further discovery disputes. Absent extraordinary circumstances, the court will not entertain discovery disputes after this deadline;

d.  A deadline for filing the administrative record for ERISA claims;

e.  A date by which the parties shall have engaged in face-to-face good faith settlement talks;

f.  Any other matters that will aid the court and parties in resolving this case in a just, speedy, and inexpensive manner as required by Federal Rule of Civil Procedure 1.

/
/
/
/
/
/

**IT IS FURTHER ORDERED** the parties shall file a proposed Case Management Order – ERISA Case containing all the proposed dates, adapted as necessary because this case involves both ERISA and state-law claims, using the form available on the court's website. The proposed Case Management Order must also be emailed in Word format to Lanham_Chambers@azd.uscourts.gov.

Dated this 28th day of May, 2026.

Honorable Krissa M. Lanham
United States District Judge